# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| Abdoulaye Laye, ) | |
| ) | |
| Plaintiff, ) | Civil Action File No.: |
| ) | |
| v. ) | |
| ) | |
| NCSPlus Incorporated d/b/a ) | **COMPLAINT** |
| National Credit Systems, ) | **WITH JURY TRIAL DEMAND** |
| ) | |
| Defendant. ) | |
| ) | |

## PRELIMINARY STATEMENT

Consumers in bankruptcy, like the Plaintiff, continue to actively participate in the credit markets while their reorganizations are pending. Motions to approve the incursion of new debt for a variety of purposes are common, as is the granting of such motions by the Bankruptcy Court. Accordingly, compliance with the Fair Debt Collection Practices Act (FDCPA) and accurate credit reporting and is as important for these consumers as it is for any other. Perhaps more so. This action for damages is based on Defendant's false communications to third-parties, in furtherance of its efforts to collect a consumer debt from the Plaintiff, in violation of the FDCPA.

1

## **PARTIES**

1. Plaintiff, Abdoulaye Laye, is a natural person who resides in Cobb County, Georgia.

2. Plaintiff is allegedly obligated to pay a consumer debt and is, therefore, a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

3. Defendant, NCSPlus Incorporated d/b/a National Credit Systems, is a corporation formed under the laws of the State of Delaware and headquartered in the State of New York. Defendant may be served with process via its registered agent, Corporation Service Company, at 80 State Street, Albany, New York 12207-2541.

4. Defendant uses interstate commerce and/or mail in its business. The principal purpose of Defendant's business is the collection of consumer debts. Defendant also regularly collects, or attempts to collect, directly or indirectly, debts owed or due, or asserted to be owed or due, to a third party. Defendant is, therefore, a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

5. Defendant touts on its website its skill in utilizing credit reporting as a consumer debt collection technique, writing "*NCSPlus will report persistent*

*debtors to Experian, Transunion, and Equifax credit bureaus.*" See, www.ncsplus.com. (Last visited February 16, 2018.)

## JURISDICTION AND VENUE

6. This Court has federal question jurisdiction over Plaintiff's Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, claims, pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d). Additionally, this Court has supplemental jurisdiction over Plaintiff's state law claims, pursuant to 28 U.S.C. § 1367.

7. This Court has personal jurisdiction over Defendant because, *inter alia*, Defendant frequently and routinely conducts business in the State of Georgia, including the conduct complained of herein.

8. Pursuant to 28 U.S.C. § 1391, venue is proper in the Northern District of Georgia because a substantial part of the events or omissions giving rise to the claims occurred in this district. Pursuant to LR 3.1B(3), NDGa, venue is proper in the Atlanta Division because the conduct complained of herein occurred in Cobb County, which is in the Atlanta Division.

### Factual Allegations Derived from Plaintiff's Bankruptcy Case

9. On January 2, 2017, Plaintiff filed a Chapter 13 Voluntary Bankruptcy Petition in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, Case Number 17-50055 (the "Bankruptcy Case").

10. In Schedule F of his Bankruptcy Petition, Plaintiff listed Defendant as collecting an unsecured claim in the amount of $1,461.00 (the "Debt").

11. On January 5, 2017, Defendant was served with notice of the Plaintiff's bankruptcy case and its inclusion as a creditor by the Bankruptcy Noticing Center. A copy of the Notice served on Defendant, highlighted for ease of reference at page 4, is attached or filed herewith as Exhibit 1.

12. On March 27, 2017, Plaintiff filed his Chapter 13 Plan in accordance with 11 U.S.C. § 1322. Plaintiff's Plan provided, in part, that Defendant's allowed claim would be paid through the Chapter 13 trustee and that no payments would be forthcoming from any other source.

13. Following confirmation, Defendant was bound by the terms of the Plan, including the provisions controlling payment of its claim, in accordance with 11 U.S.C. § 1327(a).

14. On April 25, 2017, Plaintiff's Plan was confirmed and became *res judicata* as to Plaintiff and Defendant.

15. Defendant was served with a copy of the Confirmation Order on April 27, 2017, by the Bankruptcy Noticing Center. A copy of the Order of Confirmation and certificate of service is attached hereto or filed herewith as Exhibit 2.

16. The Bankruptcy Case is currently pending, and Plaintiff continues to substantially perform under the terms of his Confirmed Plan.

**Factual Allegations Pertinent to CDIA and Metro 2 Reporting Standards**

1. The reporting of consumer credit information by credit reporting agencies ("CRAs") and data furnishers is the foundation of credit risk scoring and impacts the financial lives of consumers in innumerable ways, including the availability and cost of credit, housing opportunities, leasing prospects, insurance availability and cost, utility service, and even employment. Between two and three million consumer reports are issued by credit bureaus each day. See, *http://www.cdiaonline.org/about.cfm*.

2. The Consumer Data Industry Association ("CDIA") is an international trade association, representing over 140 members involved in credit reporting, mortgage reporting, check verification, tenant and employment screening, collection services, and fraud verification services, and the CDIA is active in both

federal and state legislative affairs, public relations, education, and the promulgation of industry standards.

3. Because consumer credit reporting information is such sensitive data that has far reaching implications for most, if not all, consumers, the CDIA works together with CRAs to develop, maintain and enhance industry-standard reporting formats and guidelines.

4. To further assist CRAs and data furnishers with performing their due diligence and reporting accurate, complete, and timely data, in satisfaction of the FCRA's legal requirements, the CDIA offers extensive training, education, and support to CRAs and data furnishers.

5. The CDIA's extensive training and support offerings include FCRA certification programs for both CRAs and data furnishers to assist each in maintaining compliance with FCRA regulations.

6. Because standardized methods are of paramount importance to the accurate, complete and timely reporting of consumer credit data, the CDIA can and will revoke FCRA certification for failure to adhere to the standards set by the CDIA.

7. In cooperation with the major CRAs, CDIA publishes the Metro 2 ("Metro 2") reporting standards to assist furnishers with their compliance

requirements under the FCRA. CDIA's reporting products are used in more than nine billion transactions each year.

See, *http://www.cdiaonline.org/about/index.cfm?unItemNumber=515*

8. The Metro 2 Format Task Force is comprised of representatives from Equifax, Experian, Innovis, and TransUnion, and is supported by the CDIA. Metro 2 Format Task Force's mission is to provide a standardized method for the reporting of accurate, complete, and timely data, and has developed the Metro 2 standards. *Id.*

9. The Metro 2 standards provide uniformity in the reporting and interpretation of credit data, including credit risk scoring.

10. It is axiomatic that in the world of consumer credit information reporting, as long as a consumer credit account is open, every month some piece of information regarding that account/consumer is going to change. For example, interest continues to accrue, payments are made, etc.

11. 15 U.S.C. § 1681s-2(a)(2) requires furnishers of information to regularly correct and update the information they previously provided to consumer reporting agencies to make sure the information is complete and accurate.

12. Accordingly, and in furtherance of its mission, the Metro 2 Format Task Force has developed an industry standard for reporting consumer accounts

7

that "will ensure the integrity and consistency of the credit information being reported." As part of that industry standard the Metro 2 Format Task Force has declared, "<u>All</u> accounts <u>must</u> be reported on a monthly basis." (Emphasis added.) *Id.*

13. Because consumer credit information changes monthly, failure to update that information on a monthly basis, yet still publishing reports containing the previously reported information without updates, means that the information being reported is almost certainly incomplete and inaccurate.

14. The Fair Isaac Corporation credit risk scoring system, commonly referred to as FICO, is the leading credit scoring system, and utilizes data reported by credit reporting agencies and furnishers which are, ostensibly, in compliance with Metro 2 standards.

15. The failure to adhere to CDIA guidelines and the Metro 2 reporting standards can adversely affect a consumer's FICO score, can create a false impression of a consumer's debt-to-income ratio, and, as here, create a false impression as to what debts are included, and excluded, from a bankruptcy case.

16. At all times relevant hereto Defendant warranted and or represented to Equifax and TransUnion that it had adopted and implemented the Metro 2 format for its reporting of consumer data and would otherwise comply with Metro 2 and

CDIA guidelines in its reporting of consumer information. Defendant has, at all times relevant hereto, incorporated the Metro 2 format for reporting consumer information into its own internal policies and procedures.

17. Defendant has actual knowledge that entities that perform credit risk scoring, and other functions utilizing the data reported by Defendant, assume Defendant's compliance with Metro 2 standards in reporting consumer information.

18. The failure on the part of a CRA and/or a furnisher to adhere to the accepted Metro 2 standards increases the probability of a reported item being false or materially misleading to users of consumer reports, as those users assume that the information in the consumer reports is being reported in compliance with Metro 2 standards, and thus interpret that information accordingly.

19. As a result, failure to adhere accepted Metro 2 standards in reporting information in consumer reports adversely affects consumers, as it causes inconsistent, misleading, and/or incorrect interpretation of information regarding consumers.

20. In order for information in consumer files and on consumer reports to be reported consistently and correctly, and with maximum possible accuracy, users of the e-Oscar system must comply with accepted Metro 2 standards. Otherwise,

the information contained in the resulting consumer reports is not consistent or uniform and is subject to gross misinterpretation by users of consumer reports.

**Factual Allegations Derived from Reporting to TransUnion**

21. On or about September 6, 2017, Plaintiff obtained a copy of his consumer report as published by TransUnion.

22. That report contained erroneous information as provided by Defendant and as published and reported by TransUnion.

17. Specifically, the report shows the status of the account as in collections, with a past due balance of $1,461.00, and no disclosure of the fact that the account is included in a pending bankruptcy case.

23. The relevant portion of the Defendant tradeline appeared in the September 6, 2017, TransUnion report as follows:

```
NTL CREDIT SYSTEMS  #10011****
117 E 24TH STREET
NEW YORK, NY 10010
(212) 213-3000

Placed for          08/01/2013              Balance:            $1,461           Pay Status:    >In Collection<
collection:                                 Date Updated:       08/05/2017
Responsibility:     Individual Account      Original Amount:    $1,461
Account Type:       Open Account            Original Creditor:  C O MAGNUM
Loan Type:          COLLECTION                                  ASSOCIATION
                    AGENCY/ATTORNEY                             SERVICE (Retail)
                                            Past Due:           >$1,461<
```

(Remaining portion of tradeline omitted.)

24. Because the Debt is included in Plaintiff's Bankruptcy Case and provided for in the Plan as stated above, the information described above was both false and misleading.

25. Further, the specific reporting described above was in derogation of accepted industry standards for reporting the account as set forth by the CDIA and Metro 2 and as adopted by Defendant. See e.g., 2015 CDIA Credit Reporting Resource Guide ("2015 Metro 2").

26. The fales and misleading information reported by Defendant to TransUnion was material in that a viewer of the report would reasonably conclude that the Debt being collected by Defendant was not included in Plaintiff's Bankruptcy Case and that Plaintiff is subject to continued collection activity, including legal process.

27. The false report made by Defendant to TransUnion was in furtherance of its efforts to collect its Debt from Plaintiff.

**Factual Allegations Derived from Reporting to Equifax**

28. On or about September 6, 2017, Plaintiff obtained a copy of his consumer report as published by Equifax.

29. That report contained erroneous information as provided by Defendant and as published and reported by Equifax.

30. Specifically, the report shows the Debt as in collections, with a balance of $1,461.00.

31. The relevant portion of the Defendant tradeline appeared in the September 6, 2017, Equifax report as follows:

| | | | |
|---|---|---|---|
| Original Creditor Name | NCSPLUS INCORPORATED | Balance Date | Aug 05, 2017 |
| Date Assigned | Aug 01, 2013 | Account Designator Code | INDIVIDUAL_ACCOUNT |
| Original Amount Owed | $1,461 | Account Number | xxxxx 8794 |
| Amount | $1,461 | Creditor Classification | Retail |
| Status Date | Aug 05, 2017 | Last Payment Date | |
| Status | UNPAID | Date of First Delinquency | Jul 30, 2013 |

(Remaining portion of tradeline omitted.)

32. Because the Debt is included in Plaintiff's Bankruptcy Case and provided for in the Plan as stated above, the information described above was both false and misleading.

33. Further, the specific reporting described above was in derogation of accepted industry standards for reporting the account as set forth by the CDIA and Metro 2 and as adopted by Defendant. See e.g., 2015 CDIA Credit Reporting Resource Guide ("2015 Metro 2").

34. The false and misleading information reported by Defendant to Equifax was material in that a viewer of the report would reasonably conclude that the Debt being collected by Defendant was not included in Plaintiff's Bankruptcy

Case and that Plaintiff is subject to continued collection activity, including legal process.

35. The false report made by Defendant to Equifax was in furtherance of its efforts to collect its Debt from Plaintiff.

## Damages

36. Defendant had actual notice that the information it was reporting regarding Plaintiff to the various credit reporting agencies was false, deceptive, and misleading.

37. Accordingly, Defendant's conduct was willful.

38. As a result of Defendant's willful actions and omissions, Plaintiff is eligible for statutory damages.

39. Additionally, as a result of Defendant's actions and omissions, Plaintiff has suffered actual damages, including out-of-pocket expenses in challenging Defendant's wrongful representations, frustration and anxiety as a result of the knowledge that Defendant is pursuing its collection strategy despite his Bankruptcy Case, and worry over the repercussions of Defendant's conduct.

40. As a result of the actions and omissions of Defendant, Plaintiff's actual damages also include the illegitimate suppression of his Fair Isaac Corporation ("FICO") credit score and other credit rating model scores.

41. The false information reported by Defendant creates a material risk of financial harm to Plaintiff stemming from the decreased perception of Plaintiff's future credit-worthiness.

## CAUSES OF ACTION

### COUNT I

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. §§ 1692e, 1692e(2), and 1692e(10)

42. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

43. Defendant's provision of false and/or misleading information in connection with its attempts to collect the alleged Debt violated multiple provisions of the FDCPA, including without limitation 15 U.S.C. §§ 1692e, 1692e(2), and 1692e(10).

44. As a result of Defendant's violations of the FDCPA, Plaintiff has suffered actual damages. Plaintiff is, therefore, entitled to recover actual damages under 15 U.S.C. § 1692k.

45. Under 15 U.S.C. § 1692k, Plaintiff is also entitled to recover from Defendant $1,000.00 in statutory damages and reasonable attorney's fees and costs.

## COUNT II

## VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT
## O.C.G.A. § 10-1-393(a)

46. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

47. O.C.G.A. § 10-1-393(a) broadly prohibits unfair business practices.

48. It was unfair and deceptive for Defendant to falsely report the status of Plaintiff's account to TransUnion in an effort to collect a debt that was scheduled in bankruptcy.

49. As pled above, Plaintiff was harmed by Defendant's unfair conduct.

50. Upon information and belief, Defendant regularly reports information to credit reporting agencies in an effort to collect outstanding debts.

51. Upon information and belief, reports to credit reporting agencies are Defendant's *modus operandi* for debt collection and are done on a wide scale.

52. Defendant's conduct amounts to an unfair business practice.

53. Defendant's conduct has implications for the consuming public in general and potential negative impact on the consumer marketplace.

54. As a result of Defendant's violations of O.C.G.A. § 10-1-393(a), Plaintiff is entitled to recover general damages, pursuant to O.C.G.A. § 10-1-399(a).

55. As a result of Defendant's willful and wanton violations of O.C.G.A. § 10-1-393(a), Plaintiff is entitled to recover exemplary damages, pursuant to O.C.G.A. § 10-1-399(a).

56. Defendant's actions were intentional, rendering it liable for treble damages, pursuant to O.C.G.A. § 10-1-399(c).

57. Plaintiff is entitled to recover reasonable attorney's fees and expenses, pursuant to O.C.G.A. § 10-1-399(d).

58. Furthermore, because Defendant has acted in bad faith, been stubbornly litigious, and/or caused Plaintiff unnecessary trouble and expense, Plaintiff is also entitled to an award of reasonable attorney's fees and expenses, pursuant to O.C.G.A. § 13-6-11.

### COUNT III

**VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT**
**O.C.G.A. § 10-1-393(a)**

59. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

60. O.C.G.A. § 10-1-393(a) broadly prohibits unfair business practices.

61. It was unfair and deceptive for Defendant to falsely report the status of Plaintiff's account to Equifax in an effort to collect a debt that was scheduled in bankruptcy.

62. As pled above, Plaintiff was harmed by Defendant's unfair conduct.

63. Upon information and belief, Defendant regularly reports information to credit reporting agencies in an effort to collect outstanding debts.

64. Upon information and belief, reports to credit reporting agencies are Defendant's *modus operandi* for debt collection and are done on a wide scale.

65. Defendant's conduct amounts to an unfair business practice.

66. Defendant's conduct has implications for the consuming public in general and potential negative impact on the consumer marketplace.

67. As a result of Defendant's violations of O.C.G.A. § 10-1-393(a), Plaintiff is entitled to recover general damages, pursuant to O.C.G.A. § 10-1-399(a).

68. As a result of Defendant's willful and wanton violations of O.C.G.A. § 10-1-393(a), Plaintiff is entitled to recover exemplary damages, pursuant to O.C.G.A. § 10-1-399(a).

69. Defendant's actions were intentional, rendering it liable for treble damages, pursuant to O.C.G.A. § 10-1-399(c).

70. Plaintiff is entitled to recover reasonable attorney's fees and expenses, pursuant to O.C.G.A. § 10-1-399(d).

71. Furthermore, because Defendant has acted in bad faith, been stubbornly litigious, and/or caused Plaintiff unnecessary trouble and expense, Plaintiff is also entitled to an award of reasonable attorney's fees and expenses, pursuant to O.C.G.A. § 13-6-11.

## TRIAL BY JURY

72. Plaintiff is entitled to and hereby requests a trial by jury.

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant for:

a.) Plaintiff's actual damages;

b.) Statutory damages pursuant to 15 U.S.C. § 1692k;

c.) General, exemplary, and treble damages pursuant to O.C.G.A. §§ 10-1-399(a) & (c);

d.) Reasonable attorney's fees and costs pursuant to 15 U.S.C. §§ 1692k and O.C.G.A. §§ 10-1-399(d) and/or 13-6-11; and

e.) Such other and further relief as may be just and proper.

Respectfully submitted this 20th day of February, 2018.

**BERRY & ASSOCIATES**

*/s/ Adam J. Klein*
Adam J. Klein
Georgia Bar No.: 425032
*aklein@mattberry.com*
2751 Buford Highway, Suite 600
Atlanta, GA 30324
Ph. (404) 235-3334
Fax (404) 235-3333

*Plaintiff's Attorney*